# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **AMANDA F. KINDER,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:08cv00038 |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | By:   PAMELA MEADE SARGENT |
| Defendant. | ) | UNITED STATES MAGISTRATE JUDGE |

*I. Background and Standard of Review*

Plaintiff, Amanda F. Kinder, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 1381 *et seq*. (West 2003 & Supp. 2008). This court has jurisdiction pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning

-1-

Case 2:08-cv-00038-JPJ-PMS   Document 16   Filed 04/28/09   Page 1 of 16   Pageid#: 58

mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Kinder filed her initial application for SSI on October 27, 1999, alleging disability beginning October 1, 1999, based on lupus, right arm pain and numbness in her right leg and arm. (Record, ("R."), at 31-32.) A hearing before an Administrative Law Judge, ("ALJ"), was held on October 12, 2000, at which Kinder was represented by counsel. (R. at 31.) By decision dated April 13, 2001, the ALJ denied Kinder's claim. (R. at 31-40.) Kinder protectively filed a second SSI application on August 7, 2001, alleging disability as of October 1, 1999, due to systemic lupus, anxiety, depression and anemia. (R. at 73-76, 88.) This claim was denied on November 30, 2001.[1] (R. at 46-47.)

The record shows that Kinder filed a third application for SSI on October 14, 2003, alleging disability beginning April 1, 2003, based on lupus, chronic abdominal pain, sleeping disorder and anxiety attacks. (R. at 77-81, 103.) The claim was denied initially and on reconsideration. (R. at 51-53, 56, 57-59.) Kinder then requested a hearing before an ALJ.[2] The ALJ held a hearing on January 3, 2006, at which Kinder

---

[1] The record does not contain documentation indicating that Kinder appealed this decision.

[2] The request for hearing is not included in the record.

-2-

was represented by counsel  (R. at 434-56.)

By decision dated February 23, 2006, the ALJ denied Kinder's claim. (R. at 16-26.) The ALJ found that Kinder had not engaged in any substantial gainful activity since her alleged onset date. (R. at 25.)  The ALJ found that the medical evidence established that Kinder had severe impairments, namely systemic lupus erythematosus, history of gallbladder surgery with abdominal pain, history of liver disease, borderline intellectual functioning, right shoulder bursitis, history of headaches and history of bronchial asthma, but he found that Kinder's impairments did not meet or medically equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 25.) The ALJ found that Kinder's allegations regarding her limitations were not totally credible.  (R. at 25.) The ALJ also found that Kinder had the residual functional capacity to perform simple, unskilled sedentary work[3] that did not require excessive exposure to heat or sunlight, that did not require her to follow detailed instructions and that did not require more than occasional climbing, balancing, stooping, kneeling, crouching or crawling. (R. at 25.) The ALJ found that Kinder had no past relevant work experience. (R. at 25.) The ALJ further found, based on Kinder's age, education, lack of work experience and residual functional capacity and the testimony of a vocational expert, that Kinder could perform jobs that existed in significant numbers in the national economy, including jobs as an order clerk, an office clerk and an information clerk. (R. at 25.)

---

[3]Sedentary work involves lifting items weighing up to 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  *See* 20 C.F.R. § 416.967(a) (2008).

Therefore, the ALJ found that Kinder was not under a disability as defined in the Act at any time through the date of his decision and that she was not eligible for benefits. (R. at 25-26.) *See* 20 C.F.R. § 416.920(g) (2008).

After the ALJ issued his decision, Kinder pursued her administrative appeals, (R. at 12), but the Appeals Council denied her request for review. (R. at 6-9.) Kinder then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2008). The case is before this court on Kinder's motion for summary judgment filed January 5, 2009, and the Commissioner's motion for summary judgment filed February 2, 2009.

## *II. Facts*

Kinder was born in 1976, (R. at 74, 82), which classifies her as a "younger person" under 20 C.F.R. § 416.963(c). She has an eighth-grade education and no work experience. (R. at 94, 140, 438.) Kinder testified at her hearing that she could not work because of pain in her right side, which was a result of scar tissue on her liver. (R. at 438.) She stated that she was limited in her ability to stand and sit. (R. at 438.) Kinder testified that she suffered from joint pain and numbness in her right hand, which made it difficult to lift and hold items. (R. at 439.) She stated that she could stand for up to 15 minutes without interruption and sit for up to 20 minutes without interruption. (R. at 441.) Kinder testified that she home-schooled her two daughters, which involved supervision and submission of their assignments. (R. at 444.)

Vocational expert, James Williams, also testified at Kinder's hearing. (R. at 446-55.) Williams was asked to consider an individual of Kinder's age, education and lack of work experience who had the residual functional capacity to perform light work that did not require exposure to extreme heat and sunlight. (R. at 448.) He stated that there would be jobs available that existed in significant numbers in the national economy, including jobs as a file clerk, a retail sales clerk and a cashier. (R. at 448-49.) Williams was asked to consider the same individual who was limited as indicated by state agency psychologist Hugh Tenison, Ph.D. (R. at 244-46, 450.) Williams stated that such an individual could not sustain competitive employment. (R. at 451.) When asked if the individual could perform unskilled, sedentary work, Williams stated that jobs were available that such an individual could perform, including jobs as a food and beverage order clerk, a general office clerk and an information clerk. (R. at 451-52.) He also stated that the individual could perform all these same jobs if she were limited as described by Dr. Gary Craft, M.D. (R. at 454.)

In rendering his decision, the ALJ reviewed records from Sharon J. Hughson, Ph.D., a clinical psychologist; Dr. Syed M. Ahmad, M.D.; Bluefield Regional Medical Center; Dr. Donald R. Williams, M.D., a state agency physician; Hugh Tenison, Ph.D., a state agency physician; The Clinic; Dr. Vijay R. Phade, M.D.; Dr. Gary Craft, M.D.; Dr. Richard M. Surrusco, M.D., a state agency physician; Dr. Donald R. Williams, M.D., a state agency physician; Joseph Leizer, Ph.D., a state agency psychologist; and Tazewell Community Hospital. Kinder's attorney submitted additional medical reports from Clinch Valley Medical Center and Wellmont Holston

Valley Medical Center to the Appeals Council.[4]

The record shows that Dr. Syed M. Ahmad, M.D., treated Kinder from August 2000 through April 2001 for her complaints of minor musculoskeletal aches and pain, systemic lupus erythematosus, ("SLE"), and skin rashes, secondary to SLE. (R. at 162-66.) Dr. Ahmad found no evidence of active joint swellings or joint deformities. (R. at 162-66.) Dr. Ahmad recommended that Kinder avoid excessive exposure to the sun. (R. at 162.)

On December 8, 2000, Sharon J. Hughson, Ph.D., a clinical psychologist, evaluated Kinder at the request of Disability Determination Services. (R. at 153-61.) The Wechsler Adult Intelligence Scale-Third Edition, ("WAIS-III"), test was administered, and Kinder obtained a verbal IQ score of 78, a performance IQ score of 76 and a full-scale IQ score of 75. (R. at 156.) The Personality Assessment Inventory test, ("PAI"), was administered. (R. at 157-59.) Kinder's responses indicated diagnostic possibilities, including dysthymic disorder and avoidant personality disorder, and ruled out major depressive disorder, social phobia, schizoid personality disorder and personality disorder, not otherwise specified. (R. at 159.) Hughson diagnosed dysthymic disorder, borderline intellectual functioning and avoidant personality disorder. (R. at 161.)

On May 25, 2001, Kinder was admitted to Bluefield Regional Medical Center

---

[4]Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 6-9), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

-6-

with a diagnosis of jaundice, abdominal pain, leukocytosis and low-grade fever. (R. at 167-74, 176-91, 193-204.) Kinder underwent a cholecystectomy during which it was noticed that her liver surface was abnormal with hemorrhagic areas and mottled areas of the surface of the liver. (R. at 167.) Biopsies showed subacute liver cell necrosis and severe hepatocellular damage with cell drop out, noted to be compatible with either drug-induced or autoimmune hepatitis. (R. at 167.) Kinder's discharge diagnosis was acute acalculous cholecystitis with jaundice, acute hepatitis, either drug-induced versus autoimmune, questionable diagnosis of lupus and malnutrition. (R. at 167-68.)

On November 15, 2001, Dr. Donald R. Williams, M.D., a state agency physician, reported that Kinder had the residual functional capacity to perform light work. (R. at 236-43.) He found no postural, manipulative, visual or communicative limitations. (R. at 239-40.) Dr. Williams indicated that Kinder should avoid concentrated exposure to extreme heat and sun exposure. (R. at 241.)

On November 16, 2001, Hugh Tenison, Ph.D., a state agency physician, indicated that Kinder was moderately limited in her ability to understand, remember and carry out detailed instructions, to maintain attention/concentration for extended periods, to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, to work in coordination with or proximity to others without being distracted by them, to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to ask simple questions or request

assistance, to accept instructions and respond appropriately to criticism from supervisors, to get along with co-workers or peers without distracting them or exhibiting behavioral extremes and to set realistic goals or make plans independently of others. (R. at 244-46.)

Tenison also completed a Psychiatric Review Technique form, ("PRTF"), indicating that Kinder suffered from an affective disorder, mental retardation and a personality disorder. (R. at 248-61.) Tenison noted that there was insufficient evidence to determine if Kinder experienced any limitations of activities of daily living. (R. at 258.) He indicated that Kinder had moderate limitations in her ability to maintain social functioning and to maintain concentration, persistence or pace. (R. at 258.) He also indicated that Kinder had not experienced any episodes of decompensation. (R. at 258.)

The record shows that Kinder received treatment from The Clinic from December 2002 through May 2004 for chronic pelvic pain, menstrual irregularities, constant abdominal pain, prolapsed uterus and low back pain. (R. at 262-91, 381-87.) In July 2003, Kinder underwent an abdominal hysterectomy. (R. at 275.)

On November 12, 2003, Kinder underwent a bone density test at Tazewell Community Hospital, which was normal. (R. at 357-58.) On October 19, 2005, Dr. Mary A. Smith, M.D., completed an assessment indicating that Kinder could occasionally lift and carry items weighing up to two pounds and frequently lift and carry items less than one-third of an eight-hour workday. (R. at 379-80.) She indicated that Kinder could sit a total of three hours in an eight-hour workday and that

she could do so for up to 30 minutes without interruption. (R. at 379.) Dr. Smith found that Kinder could stand and/or walk for a total of two hours in an eight-hour workday, but for only 15 minutes without interruption. (R. at 379.) She further noted that Kinder should not stand and/or walk for more than 20 minutes each hour. (R. at 379.) Dr. Smith indicated that Kinder should never climb, stoop, kneel, balance, crouch or crawl. (R. at 380.) She indicated that Kinder was limited in her ability to reach, to handle, to feel, to push and to pull. (R. at 380.) Dr. Smith indicated that Kinder should avoid working around heights, moving machinery, temperature extremes, chemicals, dust, fumes, humidity and vibration. (R. at 380.) Dr. Smith based this assessment on Kinder's diagnosis of lupus. (R. at 379-80.) On November 15, 2005, Dr. Smith saw Kinder for complaints of numbness of the right side of her face and arm. (R. at 364.) Dr. Smith reported that Kinder had some limitation in elevation of her right shoulder, and she diagnosed bursitis of the right shoulder. (R. at 364.) On March 6, 2006, an echocardiogram showed normal left ventricular systolic function, normal valves, unremarkable color doppler and no pericardial effusion. (R. at 393.) On April 19, 2006, a urinalysis was positive for marijuana. (R. at 399.)

Dr. Vijay R. Phade, M.D., saw Kinder on two occasions, June 15, 2004, and July 2, 2004. (R. at 292-93.) Kinder complained of right-sided abdominal pain. (R. at 292-93.) Kinder underwent a small bowel study and CT scan of the abdomen. (R. at 292, 294.) The small bowel study revealed questionable proximal bowel dilation with no obstruction. (R. at 292.) The CT scan of the abdomen and pelvis was normal, and the scan also revealed that Kinder's liver and spleen were normal. (R. at 292, 295.) Dr. Phade diagnosed abdominal pain with the possibility of some changes in the small bowel secondary to lupus. (R. at 293.)

On June 29, 2004, Dr. Gary Craft, M.D., saw Kinder for complaints of lupus, generalized joint pain with marked cramping of the hands and gastrointestinal problems, anxiety-depressive disorder and migraine headaches. (R. at 296-301.) Upon examination, Kinder was fully ambulatory and free of any acute distress. (R. at 297.) She had full range of motion of the neck and all joints. (R. at 297-98.) Her grip strength and fine manipulation were intact. (R. at 297.) Kinder's station and gait were normal. (R. at 298.) Her joints were free of inflammation, and there was no evidence of swelling, redness, heat or deformity. (R. at 298.) Dr. Craft reported that he found no evidence of chronic kidney or liver disease. (R. at 298.) Kinder's lungs were free of respiratory distress, and her gross mental status was intact. (R. at 298-99.) Dr. Craft indicated that Kinder could occasionally lift and carry items weighing up to 20 pounds and frequently lift and carry items weighing up to 10 pounds. (R. at 299.) He indicated that her abilities to sit, stand and walk were unaffected. (R. at 299.) He found no manipulative, postural or environmental limitations. (R. at 299.)

On July 12, 2004, Dr. Richard M. Surrusco, M.D., a state agency physician, indicated that Kinder had the residual functional capacity to perform light work. (R. at 306-13.) However, he noted that she could stand or walk at least two hours in an eight-hour workday. (R. at 307.) He indicated that Kinder could occasionally climb, balance, stoop, kneel, crouch and crawl. (R. at 309.) He found no manipulative, visual, communicative or environmental limitations. (R. at 309-11.) He indicated that he gave controlling weight to Dr. Craft's opinion. (R. at 313.) This assessment was affirmed by Dr. Donald R. Williams, M.D., another state agency physician, on September 29, 2004. (R. at 313.)

-10-

On July 13, 2004, Joseph Leizer, Ph.D., a state agency psychologist, indicated that Kinder had moderate limitations in her ability to understand, remember and carry out detailed instructions. (R. at 302-04.) He found that Kinder was not significantly limited in all other work-related areas. (R. at 302-03.) Leizer also completed a PRTF indicating that Kinder suffered from mental retardation. (R. at 314-29.) He found that Kinder had no limitations on her ability to perform activities of daily living or in maintaining social functioning. (R. at 324.) He found that Kinder had mild limitations in her ability to maintain concentration, persistence or pace. (R. at 324.) He indicated that Kinder had not experienced any episodes of decompensation. (R. at 324.) Leizer reported that Kinder's IQ scores indicated borderline intellectual functioning, but that there was no other psychiatric diagnosis; therefore, he opined that Kinder should be able to perform simple, unskilled work. (R. at 329.) He found that Kinder's disability allegations were not credible. (R. at 329.)

On September 27, 2007, Kinder was admitted to Clinch Valley Medical Center for symptoms of weakness, bradycardia, hypotension and complete heart block. (R. at 419-33.) She was transferred to Wellmont Holston Valley Medical Center where a permanent dual-chamber pacemaker was implanted. (R. at 400-18.) Kinder was discharged on October 3, 2007.

### III. Analysis

The Commissioner uses a five-step process in evaluating SSI claims. *See* 20 C.F.R. § 416.920 (2008); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the

Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in the process, review does not proceed to the next step. *See* 20 C.F.R. § 416.920(a) (2008).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2008); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated February 23, 2006, the ALJ denied Kinder's claim. (R. at 16-26.) The ALJ found that the medical evidence established that Kinder had severe impairments, namely SLE, history of gallbladder surgery with abdominal pain, history of liver disease, borderline intellectual functioning, right shoulder bursitis, history of headaches and history of bronchial asthma, but he found that Kinder's impairments did not meet or medically equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 25.) The ALJ also found that Kinder had the residual functional capacity to perform simple, unskilled sedentary work that

did not require excessive exposure to heat or sunlight, that did not require her to follow detailed instructions and that did not require more than occasional climbing, balancing, stooping, kneeling, crouching or crawling. (R. at 25.) The ALJ found that Kinder had no past relevant work experience. (R. at 25.) The ALJ further found, based on Kinder's age, education, lack of work experience and residual functional capacity and the testimony of a vocational expert, that Kinder could perform jobs that existed in significant numbers in the national economy, including jobs as an order clerk, an office clerk and an information clerk. (R. at 25.) Therefore, the ALJ found that Kinder was not under a disability as defined in the Act at any time through the date of his decision and that she was not eligible for benefits. (R. at 25-26.) *See* 20 C.F.R. § 416.920(g).

Kinder argues that the ALJ erred by failing to give proper weight to the opinions of her treating physician, Dr. Smith. (Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 8-10.) Kinder further argues that the ALJ erred by failing to find that she did not meet the listing for systemic lupus erythematosus found at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 14.02(B). (Plaintiff's Brief at 10-14.)

Based on my review of the record, I find that substantial evidence does not support the ALJ's decision as to Kinder's severe impairments or their impact on her residual functional capacity. In particular, the ALJ issued his decision on February 23, 2006. While this decision was on appeal to the Appeals Council, Kinder developed severe heart problems resulting in the implantation of a permanent pacemaker in October 2007. Despite the presentation of medical evidence regarding Kinder's

-13-

Case 2:08-cv-00038-JPJ-PMS   Document 16   Filed 04/28/09   Page 13 of 16   Pageid#: 70

cardiac problem to the Appeals Council, the Appeals Council affirmed the ALJ's decision finding no severe cardiac impairment. Nor did the Appeals Council conduct any review of the effect of this cardiac impairment on Kinder's work-related abilities. While it is true that this cardiac impairment was not diagnosed until more than a year after the ALJ's decision, its discovery grants credence to Kinder's complaints of extreme fatigue and Dr. Smith's severe limitations on her activities. That being the case, I find that substantial evidence does not support the ALJ's weighing of the evidence or his finding as to Kinder's residual functional capacity.

Based on my findings above, I recommend that the court deny Kinder's and the Commissioner's motions for summary judgment, vacate the final decision of the Commissioner denying benefits and remand the claim to the Commissioner for further consideration.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence does not exist in the record to support the ALJ's weighing of the evidence; and

2. Substantial evidence does not exist to support the ALJ's finding that Kinder was not disabled under the Act.

# RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Kinder's and the Commissioner's motions for summary judgment, vacate the final decision of the Commissioner denying benefits and remand the claim to the Commissioner for further consideration.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(c) (West 2006):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Chief United States District Judge.

The Clerk is directed to send certified copies of this Report and

Recommendation to all counsel of record at this time.

DATED: This 28th day of April 2009.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE

-16-